***********
The Full Commission has reviewed the Deputy Commissioner's Opinion and Award based on the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence, and having reviewed the competent evidence of record, the Full Commission hereby MODIFIES and AFFIRMS the Deputy Commissioner's Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which the parties entered into as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Plaintiff was employed by defendant-employer.
3. Plaintiff sustained admittedly compensable injuries by accident arising out of and in the course of her employment with defendant-employer on August 29, 1999, and October 15, 1999.
4. Defendant American Interstate Insurance Company was the workers' compensation carrier on the risk for defendants on August 29, 1999, and October 15, 1999.
5. Defendant American Interstate Insurance Company filed a Form 60 for the August 29, 1999 injury by accident and paid plaintiff compensation in the amount of $220.01 for the week from September 12, 1999, through September 18, 1999.
6. Plaintiff returned to work for defendants on September 19, 1999, earning the same wages as she earned prior to August 29, 1999.
7. Plaintiff alleges that she sustained an injury by accident arising out of and in the course of her employment with defendants on April 9, 2000. Defendants have not paid any compensation to plaintiff from April 11, 2000 to the present.
8. Legion Insurance Company was the workers' compensation carrier on the risk for defendant-employer on April 9, 2000. Upon the bankruptcy of Legion, NCIGA was substituted as the statutory insurer.
9. Subject to verification by a Form 22 Wage Statement or other competent evidence, plaintiff's average weekly wage was $330.00, yielding a compensation rate of $220.11, on August 19, 1999, August 29, 1999, October 15, 1999 and April 9, 2000.
10. At the hearing before the Deputy Commissioner, the parties entered the following into the evidence of record:
a. Defendants' Exhibit 1 — Statement dated April 10, 2000
b. Defendants' Exhibit 2 — Incident Report
c. Defendants' Exhibit 3 — Set of Work Restrictions
11. The issues to be determined by the Commission are whether the Industrial Commission has jurisdiction to hear this claim; which carrier is liable on the claim; and to what additional medical and indemnity compensation plaintiff is entitled, if any.
12. Pursuant to N.C. Gen. Stat. § 97-86.1 plaintiff moved the Full Commission to order payment of benefits pending appeal. By Commission Order issued June 29, 2004 defendant NCIGA was ordered to pay compensation to plaintiff pending appeal to the Full Commission.
13. At the oral arguments before the Full Commission, the Commission raised issues concerning the jurisdiction of the North Carolina Industrial Commission over plaintiff's claims, which occurred on the reservation of the Eastern Band of the Cherokee Indians where state law does not apply. The parties were given an opportunity to submit additional briefs or evidence on the jurisdictional issue. On December 29, 2004 the Commission received correspondence from Larry Blythe, Vice Chief of the Eastern Band of Cherokee Indians. This correspondence is made a part of the evidence of record. Chief Blythe stated in his letter that the casino where plaintiff worked is solely owned by the tribe and managed by Harrah's. Chief Blythe further stated that Federal law allows a tribe to consent to state jurisdiction and at this time the tribe has chosen to participate in the state workers' compensation system. Therefore, the Industrial Commission has jurisdiction over plaintiff's claims which occurred at Harrah's Cherokee Casino on the tribe's reservation.
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the Deputy Commissioner hearing plaintiff was 51 years old. She is a high school graduate. In May of 1998, plaintiff began working for defendants as a security officer in the casino operated by defendants.
2. Plaintiff sustained an admittedly compensable injury on August 29, 1999, when a patron of the casino bumped into her. The Industrial Commission assigned file numbers 101745 and 977870 to this particular claim. In addition, plaintiff filed a Form 18 asserting that she had been injured on August 19, 1999, for which the Industrial Commission assigned file number 112505, but plaintiff admitted at the hearing before the Deputy Commissioner that she has had only one such injury and it is clear from the evidence submitted that the incident occurred on August 29, 1999.
3. On October 15, 1999, plaintiff was at a meeting when a co-worker jerked her chair and plaintiff grabbed the table at which she was sitting in an effort to keep from falling. As a result of this incident, plaintiff sustained an admittedly compensable injury. This claim is the subject of Industrial Commission file number 109644.
4. Plaintiff claims that she sustained another injury on April 9, 2000, when a co-worker bumped into her. This claim is the subject of Industrial Commission file number 030788, for which compensability has been denied.
5. Following the incident of August 29, 1999, plaintiff was seen at the emergency room of Harris Regional Hospital, where she was diagnosed as suffering from a muscle strain in her neck and right upper trapezius. Defendant American Interstate authorized plaintiff to seek follow-up care from her chiropractor, Kenneth Richards. Dr. Richards diagnosed plaintiff as suffering from a cervical sprain/strain but later observed that she was also experiencing sternoclavicular pain in the left shoulder. Dr. Richards authorized plaintiff to return to work without restrictions on September 15, 1999.
6. On October 15, 1999, following the second of the injuries giving rise to these claims, plaintiff was seen by Dr. Robert Reynolds of Cherokee Urgent Care, who noted that plaintiff complained of pain in her sternoclavicular joint and across the anterior chest and upper arm. Thereafter, plaintiff returned to Dr. Richards who diagnosed plaintiff as having a sprain/strain of the sternoclavicular joint with accompanying spasms of the shoulder girdle muscles.
7. Dr. Richards released plaintiff to return to light duty work on October 21, 1999, and noted continuing improvement in plaintiff's condition during subsequent visits. Although a heavy night at work caused an aggravation of plaintiff's symptoms on one occasion, Dr. Richards released plaintiff from his care on November 29, 1999, because he felt that there was no indication that she needed additional treatment.
8. Plaintiff underwent a complete physical with her family physician on December 27, 1999. Plaintiff's physician made detailed notes of her examination of plaintiff's neck and extremities but made no indication of any abnormalities. In addition, plaintiff voiced no complaints involving her shoulder or neck during the examination or the follow-up office visit of January 13, 2000.
9. Prior to August 29, 1999, plaintiff developed degenerative cervical spondylosis. Plaintiff's cervical spondylosis was exacerbated by her injuries at work on August 29, 1999, and October 15, 1999. However, these exacerbations of plaintiff's cervical spondylosis had largely, if not completely, resolved by April 9, 2000.
10. Between November 29, 1999, and April 9, 2000, plaintiff did not experience any significant symptoms involving her neck or left shoulder.
11. On April 9, 2000, plaintiff was preparing to leave work when a co-worker ran into her backwards, hitting the middle of plaintiff's chest. Plaintiff twisted and jerked her neck trying to get out of the way. Within a few minutes of the incident, plaintiff noticed the recurrence of pain in the same area as she experienced following the August 29, 1999, injury. Before she left the casino parking lot, plaintiff was unable to raise her right arm. By the time plaintiff got home from work that evening, she was in a great deal of discomfort. Plaintiff's testimony in this regard is accepted as credible.
12. As a result of plaintiff's collision with her co-worker on April 9, 2000, plaintiff again exacerbated her pre-existing cervical spondylosis.
13. Plaintiff returned to Dr. Richards on April 11, 2000, reporting that she had experienced a recurrence of her prior pain when the co-worker bumped into her. Dr. Richards excused plaintiff from work at the time and recommended evaluation by an orthopedic physician.
14. On April 20, 2000, plaintiff was seen by Dr. James Lipsey, an orthopedic surgeon in Waynesville. Plaintiff told Dr. Lipsey that she had experienced soreness since being bumped by the co-worker on April 9, 2000. Dr. Lipsey diagnosed a contusion with a musculoligamentous sprain and prescribed a sling for plaintiff's left arm. Dr. Lipsey, who last saw plaintiff on April 27, 2000, authorized plaintiff to return to work on May 1, 2000.
15. On April 28, 2000, plaintiff consulted one of her family physicians at Smokey Mountain Family Care, Dr. Roger Jensen. Plaintiff related the circumstances regarding the collision with her co-worker. Dr. Jensen took plaintiff out of work pending therapy through the date of her subsequent surgery on September 6, 2000.
16. On May 4, 2000, plaintiff returned to Dr. Richards. Again, plaintiff related that she had been experiencing symptoms at the area of the left shoulder and neck since the collision with her co-worker on April 9, 2000. Unlike his treatment of plaintiff during 1999, Dr. Richards was not able to improve plaintiff's condition and on June 2, 2000, he advised plaintiff's family physician that he was referring plaintiff back to the family practice. Dr. Jensen then referred her to Dr. Lary Schulhof, a neurosurgeon in Asheville.
17. Plaintiff consulted Dr. Schulhof on August 29, 2000. Dr. Schulhof diagnosed plaintiff as suffering from cervical spondylosis with signs of myelopathy and recommended a cervical discectomy and fusion at C5-6 and C6-7.
18. On September 6, 2000, Dr. Schulhof performed the surgery he had recommended for plaintiff. Dr. Schulhof continued to treat plaintiff through December 28, 2000.
19. Dr. Schulhof indicated that a rating of 10% permanent partial impairment to the back was appropriate for plaintiff's cervical condition. Dr. Schulhof also indicated that because of plaintiff's cervical condition, he would advise her to limit overhead work but did not assign any other ongoing restrictions.
20. At the recommendation of Dr. Schulhof, plaintiff consulted Dr. Keith Maxwell, an orthopedic surgeon in Asheville, on February 2, 2001. Dr. Maxwell had nothing to offer plaintiff from a surgical standpoint and referred plaintiff to Dr. Andrew Rudins, a physician specializing in physical medicine and rehabilitation.
21. Plaintiff treated with Dr. Rudins from February 12, 2001, through January 8, 2002. During that time, Dr. Rudins performed a comprehensive work-up of plaintiff's condition.
22. According to Dr. Rudins, plaintiff reached maximum medical improvement by August 15, 2001, and has a permanent impairment rating of 18% to the spine. Plaintiff continued to see Dr. Rudins after that date with complaints involving her low back and lower extremities.
23. By Order filed December 4, 2002, the Deputy Commissioner granted plaintiff's request for authorization to proceed with an independent medical examination with Dr. Todd Guthrie in Fletcher, North Carolina. Dr. Guthrie's reports are part of the evidence of record. Furthermore, Dr. Guthrie has been authorized by the Commission as plaintiff's authorized treating physician.
24. Dr. Guthrie first examined plaintiff on January 13, 2003, and agreed with Dr. Rudins concerning plaintiff's work restrictions and that plaintiff was capable of sedentary work. Dr. Guthrie felt that plaintiff would benefit from continued therapy and pain management and recommended a second opinion consultation with a neuroradiologist and neurosurgeon.
25. Due to the exacerbation of plaintiff's cervical spondylosis caused by colliding with a co-worker on April 9, 2000, plaintiff developed myofascial pain and has experienced ongoing symptoms in the general area of her neck and shoulders. The treatment plaintiff sought for her neck and shoulders since April 9, 2000, was due to the exacerbation of plaintiff's cervical spondylosis, which occurred as a result of the co-worker bumping into her on April 9, 2000. Furthermore, plaintiff's injuries at work on August 29, 1999, and October 15, 1999, did not play a significant role in the symptoms she experienced on and after April 9, 2000.
26. As the result of the injury by accident on April 9, 2000 plaintiff was disabled and unable to work at any employment from April 11, 2000, through September 6, 2000, the date of plaintiff's surgery and continuing until Dr. Schuhof discharged plaintiff from his care on December 28, 2000. Plaintiff was able to perform sedentary work with some restrictions after December 28, 2000.
27. Defendants terminated plaintiff's employment during the summer of 2000. Since plaintiff's release to return to sedentary employment as of December 28, 2000, she has not made a reasonable effort to find suitable employment. Plaintiff testified that the only time she looked for work was at five or six employers during a two-week period shortly before the hearing before the Deputy Commissioner.
28. As a result of the aforementioned exacerbation of plaintiff's cervical spondylosis due to the collision with the co-worker on April 9, 2000, plaintiff retains an 18% permanent partial impairment to the back.
 ***********
Based upon the foregoing Stipulations and Findings of Facts, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 9, 2000, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer, which resulted in an exacerbation of her pre-existing cervical spondylosis. N.C. Gen. Stat. § 97-2(6).
2. Because plaintiff's claim was denied, plaintiff has the burden of providing disability, defined as a loss of wage earning capacity. Russellv. Lowe's Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). Plaintiff can satisfy her burden of proving disability in one of four ways: (1) the production of medical evidence that she is physically or mentally, as a consequence of the work related injury, incapable of working in any employment; (2) the production of evidence that she is capable of some work, but that she has, after reasonable effort on her part, been unsuccessful in her effort to obtain employment; (3) the production of evidence that she is capable of some work but that it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that she has obtained other employment at a wage less than she earned prior to her injury. Id.
3. In the case before us, the greater weight of the evidence of record fails to show that plaintiff was disabled after she was last released by Dr. Schulhof on December 28, 2000. Plaintiff has not met her burden to show that she was unable to obtain employment after a reasonable effort or that it was futile for her to seek employment because of other factors. She was capable of some work and no doctor took her out of work. N.C. Gen. Stat. § 97-2(9); Russell v. Lowes Product Distribution, supra.
4. As a result of plaintiff's injury of April 9, 2000, plaintiff was disabled and is entitled to compensation for total disability at the rate of $220.11 per week from April 11, 2000, through December 28, 2000. N.C. Gen. Stat. § 97-29.
5. As the result of the compensable injury by accident on April 9, 2000, plaintiff sustained an 18% permanent functional impairment to her back for which she is entitled to 54 weeks of compensation of the rate of $220.11 per week. N.C. Gen. Stat. § 97-31(23). Defendant NCIGA is entitled to a credit against this compensation for any overpayment of temporary total disability compensation to plaintiff made pursuant to the Commission Order of June 29, 2004.
6. Plaintiff is entitled to payment of medical compensation associated with the injury she sustained on April 9, 2000, regardless of whether it is categorized as treatment for the neck or treatment for the shoulders, including the treatment she received with and at the direction of Dr. Reynolds, Dr. Lipsey, Smoky Mountain Family Care Center, Dr. Richards, Dr. Schulhof, Dr. Maxwell, Dr. Rudins, and Dr. Guthrie. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. The compensation and medical benefits to which plaintiff is entitled hereunder shall be paid by defendant-employer and NCIGA. Defendant-carrier, American Interstate Insurance Company, shall be dismissed from these proceedings.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendant-employer and NCIGA shall pay plaintiff compensation at the rate of $220.11 per week from April 11, 2000 through December 28, 2000. To the extent that this compensation has not already been paid, the amount accrued shall be paid in a lump sum subject to the attorney's fee approved below.
2. Defendant-employer and NCIGA shall pay plaintiff for the 18% permanent functional impairment to her back at the rate of $220.11 per week for 54 weeks. This amount has accrued and shall be paid in a lump sum, subject to the attorney's fee approved below.
3. Defendant-employer and NCIGA are entitled to a credit for any compensation paid to plaintiff after December 28, 2000 which shall be applied to the compensation awarded in paragraphs 1 and 2 of this Award.
4. Defendant-employer and NCIGA shall pay all bills for medical compensation plaintiff has incurred as a result of the exacerbation of plaintiff's cervical condition on April 9, 2000, including treatment for plaintiff's myofascial pain, regardless of whether said treatment is characterized as treatment to the shoulder or shoulders or treatment to the neck, including treatment plaintiff has incurred with or at the direction of Dr. Reynolds, Dr. Lipsey, Smoky Mountain Family Care Center, Dr. Richards, Dr. Schulhof, Dr. Maxwell, Dr. Rudins, and Dr. Guthrie.
5. Plaintiff's attorney is hereby awarded a reasonable fee in the amount of 25% of the compensation due under paragraphs 1 and 2 of this Award. Twenty-five percent of the amount, which has accrued shall be deducted from the amount to be paid plaintiff and shall be paid directly to plaintiff's counsel.
6. Defendant American Interstate Insurance Company is hereby DISMISSED from these proceedings.
7. Defendant-employer and NCIGA shall pay the costs of these proceedings, including reasonable expert witness fees in the amount of $400.00 each to Dr. Richards, Dr. Rudins and Dr. Schulhof.
This the 3rd day of January 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER
LKM/kjd